

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2007

# Whooten v. Bussanich

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1441

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Whooten v. Bussanich" (2007). *2007 Decisions*. Paper 445.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/445

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

BLD-353                                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 07-1441
_____

PAUL WHOOTEN,

Appellant


v.


DR. ANTHONY BUSSANICH; A. W. HOBART;
ASST. H.S. ADMINISTRATOR ZAGAME,
are sued in their official capacities;
UNITED STATES OF AMERICA; HEMPHILL, H.S.A.


_____


On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 04-cv-00223)
District Judge:  Honorable John E. Jones III
_____


Submitted For Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B) or Summary Action
Under Third Circuit LAR 27.4 and I.O.P. 10.6
August 23, 2007

Before:    MCKEE, FUENTES AND VAN ANTWERPEN, <u>CIRCUIT JUDGES</u>.

(Filed:  September 12, 2007)
_____

OPINION
_____

PER CURIAM

Paul Whooten filed a civil rights action against the United States and USP-Lewisburg officials asserting constitutional and statutory violations related to the medical treatment he received for "chronic cluster headaches." Whooten appeals following entry of orders by the United States District Court for the Middle District of Pennsylvania granting the defendants' motions for summary judgment and denying Whooten's motions requesting that the court appoint counsel and an expert witness. We will affirm the judgment of the District Court.

I.

Whooten suffers from cluster headaches which (when acute) are debilitating and cause him extreme pain. According to his complaint, from February 2003 to December 2003, Whooten was treated with Prednisone, Imitrex, Verapamil, and Toredol, all of which are contraindicated given his history of gastrointestinal bleeding and high blood pressure. Whooten alleges that, as a result of taking these medications, he vomited blood, and experienced high blood pressure, dizziness, (continuing) headaches, blurred vision, severe stomach pain, and fatigue. According to Whooten, the only effective available medication is Nalbuphine Hydrochloride (or Nubain), a narcotic which Clinical Director Bussanich previously provided to Whooten once a month, but no longer prescribes. Whooten contends that although he was referred to a neurologist while at USP-Lewisburg, Dr. Bussanich refused to follow the neurologist's recommendation that Whooten be provided Nubain as needed for cluster headache pain, and that, as a result, he is stricken with daily debilitating cluster headaches and depression.

Whooten's amended complaint claims that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Whooten also alleges Federal Tort Claims Act (FTCA) claims against the United States, and violations of the Americans with Disabilities Act and the Rehabilitation Act. The defendants filed a motion to dismiss or, in the alternative, for summary judgment.

The District Court construed the motion as one for summary judgment, and granted it with regard to Whooten's ADA and Rehabilitation Act claims. As to the constitutional claims, the District Court found defendants Hemphill and Zagame to be immune from suit,[1] and granted summary judgment with respect to defendants Hobart and Bussanich. The District Court allowed the FTCA claims to move forward. The parties conducted discovery,[2] and the government again moved for summary judgment. The District Court agreed with the defendants that because Whooten did not produce medical expert testimony of negligence as required by Pennsylvania law, he could not make out a *prima facie* claim under the FTCA. The District Court granted summary judgment, and Whooten now appeals.

---

[1]Hemphill and Zagame are immune to Bivens actions because of their status as employees of the United States Public Health Service.

[2]During this period, the District Court also denied Whooten's motions to appoint an expert witness and to appoint counsel.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review, and must determine whether the record, when viewed in the light most favorable to Whooten, shows that there is no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. See Torres v. Fauver, 292 F.3d 141, 145 (3d Cir. 2002).

While we agree substantially with the District Court's analysis, its evaluation of Whooten's Eighth Amendment claim against Dr. Bussanich merits discussion here. In order for Whooten to prevail, he must show that prison officials were deliberately indifferent to his serious medical need. See Estelle v. Gamble, 429 U.S. 97 (1976). Allegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections. Id. at 105-06. Deliberate indifference requires a sufficiently culpable state of mind, such as "reckless[] disregard[]" to a substantial risk of serious harm to a prisoner. See Farmer v. Brennan, 511 U.S. 825, 834, 836 (1994). This Court has concluded that the standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. See Monmouth v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987); see also Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). We have also held that prison officials who

4

continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Among Whooten's claims regarding Dr. Bussanich, he asserts that 1) there was an unwarranted delay by Bussanich in referring him to a neurologist, 2) Bussanich refused to follow the treatment plan recommended by that neurologist, and 3) that Bussanich's refusal to prescribe effective medications was improperly based on the suspicion that Whooten was "drug seeking." In its analysis of Whooten's Eighth Amendment claim against Dr. Bussanich, the District Court noted that prison medical staff had "provided him with treatment for his cluster headaches since his arrival" at the prison, that Whooten had been "prescribed numerous medications," and concluded that Whooten's allegations could not support a claim of deliberate indifference. While we agree that Whooten was treated for his cluster headaches, the District Court did not adequately address Whooten's allegations concerning the denials of (or delay in) a necessary referral and denial of effective treatment, resulting in pain.

However, the record does support the District Court's conclusion. In the past, Whooten has sought treatment for an addiction to prescription narcotics. The neurologist apparently recommended treatment with Nubain without knowing this. After Dr. Bussanich made the neurologist aware of Whooten's prior addiction, the neurologist indicated that Nubain could be used for acute attacks at the discretion of prison medical officials. It appears that Dr. Bussanich and other prisoner officials have followed this

5

treatment plan, as Whooten's medical records indicate that he now occasionally receives Nubain and other medications for acute headaches.

Turning to the delay before Whooten was referred to a specialist, the main conflict during this period of time was that whereas Whooten desired treatment with Nubain to relieve his headache pain, Dr. Bussanich and other prison officials often refused Nubain and sought to treat with another medication. This conflict does not support an argument that Dr. Bussanich and other prison officials were not capable of evaluating Whooten's treatment needs, or that necessary medical treatment was delayed for non-medical reasons. See Monmouth, 834 F.2d at 347.

Finally, with regard to the headache pain, and the negative effects that Whooten experienced from other medications during the period in which Bussanich and other prison officials refused to treat him with Nubain, the record is clear that prison officials denied Whooten the treatment he wished for reasons related to his past drug addiction. Whether those reasons justify that medical decision is a question of negligence, not deliberate indifference.

Accordingly, we agree with the District Court that the government is entitled to judgment as a matter of law and will affirm the judgment of the District Court.